## LANG *versus* WHITNEY.

The property in a judgment, recovered by a guardian in the name of his ward, rests in the ward.

And the guardian has no *lien* thereon for advances made in its recovery.

Nor can he maintain any action after the death of his ward against an officer, for the money collected on *such* judgment.

ON REPORT from *Nisi Prius*, TENNEY, J., presiding.

CASE, against defendant, as late sheriff of Somerset county, for neglect to pay over money collected on an execution. The writ was dated Aug. 31, 1853. Defendant pleaded the general issue, and filed a brief statement, of payment of the sum collected to an administrator of the real owner of the judgment and execution.

The plaintiff, in August, 1850, was appointed guardian of Abigail Badger, and gave the required bond. Abigail was possessed of a contract with one Jonathan Badger & al., about which a dispute arose, and the matter was submitted to referees, by the plaintiff and the other parties to the contract, and bonds were interchanged to abide by the award. A report was made in favor of the plaintiff as such guardian, and he subsequently commenced a suit on the bond and recovered judgment, as guardian, for the amount allowed by the referees.

On Feb. 11, 1852, execution was issued on that judgment, and put into the hands of defendant, then sheriff, who on March 31, 1852, collected the same.

On April 8, 1852, the plaintiff demanded of the defendant, the money by him collected on this execution.

In procuring the judgment, the plaintiff had expended large sums of his own money, in payment of witnesses and counsel besides his own personal expenses and time spent in preparing for trial, for which he had no remuneration.

Abigail Badger died in May, 1852, and one James B. Dascomb was appointed administrator on her estate June 1, 1852.

On Oct. 13, 1852, the defendant paid over the money collected on this execution, to said administrator, excepting the costs which were paid to the attorney in that suit.

The plaintiff settled an account with the Judge of Probate, ·in which he was allowed for his expenditures in this suit.

In the inventory, returned by the administrator of Abigail, no mention was made of this judgment, or· of the money in the hands of the defendant. [Objections were made to the

Lang *v.* Whitney.

admissibility of some of the evidence which it became neces-
sary to notice.]

The Court were to render such judgment upon the evi-
dence as the law requires.

*D. D. Stewart*, for plaintiff.

1. The plaintiff gave his bond to the defendants in the
execution, to abide by the award of the referees and perform
it.   He gave it describing himself as guardian.   He received
the defendants' bond to the same effect.   It was made to him
as guardian and so described him.   But although he was
described as guardian, it is clear upon the authorities that he
bound himself *personally.*   He could not bind his ward by
any deed or contract he might execute, nor the estate of his
ward.   *Jones* v. *Brewer,* 1 Pick. 317; *Davis* v. *French,* 20
Maine, 21; *Thatcher* v. *Dinsmore,* 5 Mass. 299; *Foster* v.
*Fuller,* 6 Mass. 58; *Sumner* v. *Williams & al.* 8 Mass. 162;
*Whiting* v. *Dewey,* 15 Pick. 428.

The plaintiff had authority to submit the claims of his
ward to arbitration.   *Weston* v. *Stuart,* 2 Fairf. 326.

. It is clear, therefore, that the bond given by Badger and
Newhall to the plaintiff, to abide by and perform the award
of the referees, was not the property of his ward nor had
she any right, title or interest in it.

2. But if the description of the plaintiff as guardian in the
arbitration bond should not be treated as surplusage, and if
the bond be considered as belonging to the estate of the
ward, still, the moment judgment was obtained on it by the
guardian, whether in his own name or in that of the ward by
him, is immaterial, he being a party to the record, it became
*a debt due to him* and *was assets in his hands for which he
was responsible* to the estate of his ward.   *Talmage* v. *Chap-
el & al.* 16 Mass. 71; *Bonafous* v. *Walker,* 2 D. &-E. 128;
*Pierce* v. *Irish,* 31 Maine, 260.

The execution issued on such judgment, therefore, being
merely the *fruit of the law,* must be considered as the pro-
perty of the plaintiff; was rightfully placed by him in the

hands of the defendant, and the money collected on it by the defendant was rightfully demanded of him by the plaintiff, and upon his refusal to pay a right of action vested in the plaintiff which this suit is brought to enforce.

3. This action should be maintained because plaintiff expended in good faith, and necessarily, a large amount of money in collecting the debts of his ward which he was bound by law to do, and common justice, not to say common sense, would require that he should be made whole. This is all he asks in the present suit. But the *statute* would seem to settle this question. By § 21 of c. 110 of the R. S. the guardian is required to sue for all debts due his ward; by § 20, he is required to pay all debts due from his ward, and by § 15, he is required to give bond that among other things, he will, "at the expiration of his trust, pay and deliver over all moneys and property which, *on a final and just settlement of his accounts*, shall appear to be remaining in his hands." Here is a direct authority to him to retain enough from the estate of the ward to make himself whole. No other sensible construction can be put upon the words of the statute. Does it come to this, then, that because the defendant wrongfully refused to pay to the plaintiff the money collected on the execution when demanded, he is to be deprived of his just rights, rights secured to him by statute? Can the administrator now step forward, avail himself of the defendant's wrongful refusal, and take possession of funds rightfully belonging to the plaintiff and which, but for that wrongful refusal of the defendant, would now be in his hands? It is very clear that if the defendant can defend this action successfully by showing that he has paid this money over to the administrator, if such a defence can be allowed to be set up by him, then the plaintiff is without remedy. If the money is rightfully in the hands of the administrator, he can only pay it out in the manner and for the purposes authorized by the statute.

4. *The rights of the administrator could only commence when those of the guardian terminated. Those rights did*

not extend to any other or larger part of this money than actually belonged to the estate he represented. They could not by possibility embrace the whole sum, because the plaintiff was justly entitled to retain enough of it to reimburse him for the sums he had paid out in obtaining the judgment and execution. *The balance only belonged to the estate.* The defendant claims, that he has paid over this whole sum to the administrator. But it is entirely clear that the administrator could never be entitled to receive the whole of it, he might not be entitled to any part of it. That question could only be determined when the guardian's account should be settled. The defendant therefore paid over the money in his own wrong, and such payment furnishes no defence to this suit.

5. But it is denied that a judgment recovered by the guardian and which has become assets in his hands and for which he is responsible upon his bond, is in fact or law a chose in action of the party deceased. The rights of the guardian have intervened to so much at least as will reimburse him for his services and money expended as guardian, *and the only claim which the ward when in life* or his heirs *or creditors could set up to the proceeds of such judgment,* or to the assets in the hands of the guardian, would be the balance remaining upon a just settlement of his account, with the Judge of Probate. The administrator succeeds to the rights of the deceased and can have no greater or other rights as against the guardian than the ward had. It follows that he could only claim *such balance* as might remain in the guardian's hands, and could only reach *that* through the intervention of the Judge of Probate. It is clear that he could claim no *specific fund* growing out of a *particular debt* collected by the guardian, as in this case he has attempted, but only a *general balance* due from the guardian. Any such judgment and execution therefore, as in the present case, would not be a *chose in action* of the party deceased, but assets in the hands of the guardian.

*J. S. Abbott,* for defendant, made a written argument,

which embraced the various points in the case, but which have become immaterial from the view taken of it by the Court. So far as it bore upon the point on which the case turned, he maintained, that if the plaintiff has any legal or equitable claim it is not *in rem*, against this particular fund. He has, by no law, any lien upon this money, and he must prove and collect his demand, in the same way as the other creditors of the estate of said Abigail.

It would be an anomaly to allow the creditor of the estate of said Abigail to maintain an action against a debtor to that estate. It is believed, that the proposition is too absurd to require or admit of argument to overthrow it.

SHEPLEY, C. J. — By the report, these, among other facts, are presented. The plaintiff as guardian of Abigail Badger, agreed with Jonathan Badger and Henry C. Newhall, to refer a claim, which his ward had against them. Badger and Newhall executed a bond to the plaintiff, as guardian, and he one to them, conditioned to abide and perform the award of the referees. An award was made finding a certain sum due to the ward, which Badger and Newhall refused to pay. The plaintiff commenced a suit on the bond taken to himself in the name of his ward, suing by her guardian, and a judgment was recovered in her name for the amount found to be due to her by the award. Upon an execution issued on that judgment, the defendant, as sheriff, collected the amount of it, and a demand for the money was made by the plaintiff upon him.

It will not be necessary to notice many of the points made by the counsel of the respective parties. It may be proper to state, that Abigail Badger died, and that James B. Dascomb has since been appointed her administrator, to whom, upon an indemnity given, the defendant has paid the money collected, excepting the costs, which were paid to the attorney having a lien upon them.

The judgment, for satisfaction of which the money was collected, having been recovered in the name of the plaintiff's ·

ward, and not, as it might have been, in his own name, the property in it was vested in the ward, not in her guardian. He could not be considered as the real and she the nominal party, for the original cause of action was hers. If the judgment had been recovered in his name, the beneficial interest in it would have been in the ward, and her guardian would have been obliged to credit her in his account as guardian with the whole amount of it; and have sought an allowance in the Court of Probate for the time and money expended in its recovery. He has not become the owner of any part of that judgment by reason of the money by him advanced to recover it; nor does the law give him a lien upon. it on account of such advances. Having no legal or equitable interest in the money collected he cannot maintain this suit.

*Plaintiff nonsuit.*

TENNEY, APPLETON, RICE and CUTTING, J. J., concurred.